IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ERIC ALSTON,

                                                                           OPINION AND ORDER

Petitioner,

                                                                            15-cv-325-bbc

v.

JUDY SMITH,
Warden, Oshkosh Correctional Institution,

Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Eric Alston, an inmate at the Oshkosh Correctional Institution, is proceeding on his claim that he was denied the right to an impartial decision maker at his probation revocation hearing when the hearing officer acknowledged that she had attended a program about a criminal deterrence program in which petitioner was participating. Respondent has filed an answer to the petition and both parties have submitted briefs on the merits. Having reviewed the parties' pleadings, briefs and exhibits, I conclude that petitioner cannot meet his high burden of showing that the state courts applied clearly established federal law unreasonably or made unreasonable determinations of fact in determining that petitioner had not established an impermissibly high risk of bias. Accordingly, the petition must be denied.

The following facts are drawn from the record of the state court proceedings, attached to the state's response, dkt. #17.

1

RECORD FACTS

On June 28, 2010, petitioner was convicted in the Circuit Court for Dane County in three separate cases of two counts of battery, one count of child abuse and one count of criminal damage to property, all as a repeat offender. He was placed on probation. While he was on probation, a coalition of law enforcement agencies in Dane County led by the Madison Police Department created a new program called the Special Investigation Unit (SIU). The SIU focused on a small group of individuals identified as chronic offenders, providing them additional resources intended to deter them from reoffending, while simultaneously warning them that the Department of Corrections would vigorously and swiftly seek revocation and the lengthiest sentences possible if a member of the group violated the rules of his probation. Petitioner was notified in early November 2011 that he was one of ten individuals targeted by the unit.

On December 6, 2011, petitioner was placed in state custody for alleged violations of his conditions of probation. Shortly thereafter, the Department of Corrections initiated revocation proceedings against him. A final revocation hearing was held on April 24, 2012 before Beth Whitaker, an administrative law judge for the Wisconsin Division of Hearings and Appeals. The fact that petitioner was one of the 10 individuals targeted by the SIU was discussed in the revocation summary and at the revocation hearing. Whitaker informed the parties that she had attended a presentation about the unit, stating that "these folks [SIU officers] came to our office and represented their program to us and, I mean, they did make

2

it abundantly clear that, violations, they intend these folks to be revoked." She explained further:

> It was two law enforcement officers, if I remember correctly, and they gave an informational presentation. And it may have been at the request of our agency, and it may have been initiated by someone else. I don't know, I just went along with the other [hearing examiners] in my office and we were given information about this program right around the time that it came out in the newspaper. And the summary of it as I remember it is we were told about the vast resources that were being provided to these folks that were at high risk, and that the program was intended as a last chance, and that violations should be treated as sort of a last straw. And in the case of supervision that it would be expected that they wouldn't be given another chance. In other words, [they] would be revoked, and in the case of a criminal case they would be prosecuted. What I didn't hear is that we're expected, that they expected us to revoke people when the violations weren't proven, so I think to that extent, I mean I don't think at any point that they suggested that we revoke people that hadn't done anything. So there's part of my decision making that's not relevant to what their program was about, part of it that I guess you could say is [relevant].

In response to Whitaker's remarks, petitioner asked that the proceedings be suspended so that a "neutral party" who had not attended the SIU presentation could be found to adjudicate the revocation hearing. Petitioner's probation agent objected on the ground that petitioner had been in custody for a substantial period of time and witnesses were present and ready to testify. Whitaker denied petitioner's motion to suspend the proceedings.

Whitaker eventually issued a written decision ordering revocation, finding that petitioner had committed five of the six rule violations alleged against him, including an act of violence, refused to accept responsibility for his behavior, disregarded his probation agent's instructions, was a threat to public safety and needed to be held accountable.

3

Petitioner appealed the order and on May 23, 2012, David Schwarz, Administrator of the Division of Hearings and Appeals, affirmed Whitaker's order. Schwarz found that there had been no improper ex parte communication between the Special Investigation Unit and Administrative Law Judge Whitaker and that Whitaker's attendance at the SIU training was not problematic because petitioner had not been specifically identified and the administrative law judges were not told how to conduct revocation hearings. Petitioner then filed a certiorari action in the Circuit Court for Dane County, which affirmed Schwarz's decision. Petitioner then appealed to the Wisconsin Court of Appeals, arguing among other things that Whitaker's attendance at the SIU training and subsequent comments created an impermissibly high risk of bias that required a new revocation hearing with a new decision-maker. Dkt. #17, exh. 6, at 13.

In a per curiam decision issued on May 6, 2014, the court of appeals rejected petitioner's claims and affirmed the revocation decision. State ex rel. Alston v. Schwarz, 2013AP1074 (Wis. Ct. App. May 6, 2014) (per curiam) (unpublished decision), attached to State's Response, dkt. #17, exh. 4. Although petitioner did not argue that Whitaker was biased, the court of appeals concluded that Whitaker was not biased in fact, pointing to her statements at the hearing in which she explained that she would decide the department's petition in the same way she would decide any other petition and would determine whether the alleged violations were proven, regardless of petitioner's participation in the SIU program. Id., at ¶5. As for petitioner's claim that Whitaker's attendance at the informal

presentation by the unit gave rise to an impermissibly high risk of bias, the court was not persuaded, explaining:

> Members of the legal profession, including members of the judiciary, regularly attend educational seminars and meetings to stay abreast of current developments in law and legal policy, including information about stakeholders in the legal system and new programs that are designed to more effectively serve the citizenry. Alston does not argue that anything specific to his case was presented at the meeting the hearing examiner attended. Because the meeting provided general information about the program, not specific information about particular participants, we conclude that the hearing examiner's attendance did not create an impermissibly high risk of bias in violation of the due process clause.

Id.

The Wisconsin Supreme Court denied petitioner's request for review on November 13, 2014.

OPINION

To obtain federal habeas relief, petitioner must show that the state court's adjudication of his claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). In applying this standard, the federal habeas court reviews "the decision of the last state court that substantively adjudicated each claim." Gonzales v. Mize, 565 F.3d 373, 379 (7th Cir. 2009). Because the Wisconsin Supreme Court declined to review petitioner's

5

case without addressing the merits, this court must apply the § 2254 standard to the court of appeals' decision.

A state court decision involves an "unreasonable application" of Supreme Court precedent within the meaning of § 2254(d)(1) when the "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Id. at 102. Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786–87. "This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means something like lying well outside the boundaries of permissible differences of opinion." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation marks omitted); Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.") (internal quotation marks omitted); see also Richter, 131 S.Ct. at 786 ("[E]ven

a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

As for state court findings of fact, those facts are presumed correct unless petitioner rebuts that presumption by clear and convincing evidence. Williams v. Bartow, 481 F.3d 492, 498 (7th Cir. 2007) (citing § 2254(e)(1)). "Unreasonableness also serves as the touchstone against which state court decisions based upon determinations of fact in light of the evidence presented are evaluated." Ward v. Sternes, 334 F.3d 696, 703–04 (7th Cir. 2003) (citing § 2254(d)(2)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010) (finding that even if a view of the evidence that is contrary to the state court's conclusion is "debatable," it does not follow that the state court conclusion was unreasonable). Rather, unreasonableness may be established if "a petitioner shows that the state court determined an underlying factual issue against the clear and convincing weight of the evidence." Morgan v. Hardy, 662 F.3d 790, 798 (7th Cir. 2011).

Under the due process clause, a probationer is guaranteed certain procedural protections before his probation may be revoked, one of which is the right to a "neutral and detached" judicial officer. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 488 (1972). This right is violated when the adjudicator is biased in fact or when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," as, for example, when the adjudicator has a pecuniary

7

interest in the outcome or has been the target of personal abuse or criticism from the party before him.  Withrow v. Larkin, 421 U.S. 35, 46-47 (1975).  However, adjudicators are entitled to a presumption of honesty and integrity, id., at 47, and thus the constitutional standard for impermissible bias is high.  Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 821 (1986).

In its decision, the state court of appeals properly recognized that petitioner enjoyed a due process right to a fair and impartial decision maker at his administrative hearing and that he could establish a due process violation by showing that "the risk of bias [on the part of the decisionmaker] is impermissibly high." State ex rel. Alston v. Schwarz, at ¶4 (citations omitted).  The question before *this* court, then, is whether the appellate court's conclusion that petitioner had not shown this risk of bias reflects a reasonable application of that rule.

Having considered petitioner's arguments in support of his petition, I am persuaded that the court of appeals' application of federal law was reasonable.  As an initial matter, petitioner does not address the § 2254 standard of review anywhere in his opening or reply brief.  He does not argue that the court of appeals applied federal law unreasonably or determined any factual issues against the clear and convincing weight of the evidence.  Instead, he merely reiterates the arguments he made in his petition for discretionary review by the Wisconsin Supreme Court.  Although this court will construe a pro se litigant's brief liberally, it does not craft arguments or perform legal research on the litigant's behalf when the litigant fails to do so.  Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001).

8

As respondent points out, the only federal case that petitioner cites is <u>Withrow</u>, but that case does not advance petitioner's position. In <u>Withrow</u>, 421 U.S. at 47-51, the Supreme Court was not persuaded that a medical examining board's exposure to evidence during a nonadversary investigation into a physician's alleged misconduct presented such a risk of actual bias or prejudgment as to prohibit the board from presiding at a later adversary hearing on the merits of the misconduct allegation. This fact pattern is different from petitioner's case, so it is not helpful. As the Court noted, determining whether a particular situation creates an unconstitutional risk of bias on the part of the decision maker is a fact-specific inquiry. <u>Id</u>. at 47. Due process is threatened only where, "under a realistic appraisal of psychological tendencies and human weakness," the facts showing a probability of bias are strong enough to "overcome a presumption of honesty and integrity in those serving as adjudicators." <u>Id</u>.

Appraising the facts before it, including Whitaker's statements at the hearing and the lack of any evidence that she was told at the SIU training about petitioner's case or how she should adjudicate revocation proceedings involving SIU targets, the court of appeals determined that petitioner had not overcome this presumption. This was not an unreasonable conclusion. Certainly, it was not "well outside the boundaries of permissible opinion" to find that Whitaker's mere attendance at a training seminar at which she was informed about the program's goal of keeping chronic offenders from reoffending by offering "last chance" incentives did not present an impermissible risk of bias.

9

As he did in state court, petitioner argues that, in light of Whitaker's admission that the SIU trainers told attendees that the program was the "last straw" and that revocation was the expected consequence of failure, the point of the training seminar could only have been to encourage the Division of Hearings and Appeals to revoke SIU targets and that Whitaker no doubt felt this pressure. Certainly, that is one way to view the situation, but it is not the only way. As the court of appeals noted, members of the judiciary regularly attend training seminars or receive information about specific programs targeting stakeholders in the legal system, but this fact is generally not viewed as prohibiting a judge from subsequently presiding over a case involving one of the program's targets. Further, petitioner presented no evidence that his case was discussed at the SIU seminar or that the administrative law judges were told that they "had" to revoke a target's probation if violations were found. Fairminded jurists could agree that these facts did not give rise to a situation presenting an impermissibly high risk of bias, and as noted above, petitioner makes no arguments to the contrary. Accordingly, petitioner is not entitled to habeas relief.

A few more matters require brief discussion. First, on reply, petitioner makes a number of arguments challenging the sufficiency of the evidence adduced at his revocation hearing and asserts that he has "newly discovered evidence." Dkt. #24, at 18-25. Arguments raised for the first time on reply are waived. Black v. Educational Credit Management Corp., 459 F.3d 796, 803 (7th Cir. 2006). In any event, none of petitioner's arguments are sufficient to establish that the state appellate court's decision was unreasonable.

10

Second, in the order to show cause dated August 10, 2015, dkt. #13, I found that in addition to his bias claim, petitioner sought to raise a claim that it was illegal for the administrative law judge to allow an assistant district attorney to represent the Department of Corrections in the revocation proceedings. I ruled that this claim had to be dismissed because it rested solely on a claimed error of state law for which § 2254 offers no relief, but I did not direct the clerk to dismiss the claim at that time. Accordingly, I do so in the order below.

Finally, although I am denying the habeas petition, I find that petitioner has made a substantial showing of the denial of his constitutional right to due process at his revocation hearing. His bias claim is strong enough that reasonable jurists could debate whether the petition could be resolved in a different manner or at least is adequate to warrant further consideration. Accordingly, he is entitled to a certificate of appealability under § 2253(c)(2).

ORDER

IT IS ORDERED that

1. Petitioner's claim that an assistant district attorney was not authorized to represent the Department of Corrections in the revocation proceeding is DISMISSED;

2. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED; and

3. Petitioner is entitled to a certificate of appealability on his claim that the

11

administrative law judge who presided at his probation revocation hearing was biased.

Entered this 2d day of February, 2016.

                                  BY THE COURT:

                                  /s/

                                  BARBARA B. CRABB
                                  District Judge